1
2
3
4
5
6
7

8           **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   KATHLEEN R. JOHNSON,                    No. CIV S-07-0338-CMK

12              Plaintiff,

13        vs.                                 MEMORANDUM OPINION AND ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16   _____/

17         Plaintiff, who is proceeding pro se, brings this action for judicial review of a final

18   decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the

19   consent of the parties, this case is before the undersigned for final decision on plaintiff's motion

20   for summary judgment (Docs. 40, 43) and defendant's cross-motion for summary judgment (Doc.

21   41).

22                          **I.  PROCEDURAL HISTORY**

23         Plaintiff applied for social security benefits on October 12, 2004.  In her

24   application, plaintiff claims that her disability began on October 1, 2004.  Plaintiff claims her

25   disability consists of a combination of breathing problems due to chronic obstructive pulmonary

26   disease (COPD), and leg and back pain.  Plaintiff's claim was initially denied.  Following denial

                                          1

of her request for reconsideration, plaintiff requested an administrative hearing, which was held

on May 9, 2006, before Administrative Law Judge ("ALJ") John M. Bodley.   In his October 25,

2006, decision, the ALJ made the following findings:

1.   The claimant filed applications for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income (SSI) benefits on October 12, 2004, alleging "disability," beginning on October 1, 2004.

2.   Examination of the claimant's earnings record discloses that she was insured for Title II Disability Insurance Benefits on October 1, 2004, the alleged onset of "disability" date, and remains so insured through at least December 31, 2010.

3.   The claimant has not engaged in substantial gainful activity (SGA) since October 1, 2004.  Her current part-time work as a home telemarketer is not generating earnings sufficient to raise the presumption of SGA (see text).

4.   The claimant's "severe" impairment is chronic obstructive pulmonary disease (COPD).  It is agree[d] with the State Agency Medical Consultant (and Dr. Beech) that there is no medically-determinable impairment of record to explain complaints of leg pain.  In addition, despite the claimant's rather bizarre missives, there is no evidence of any medically-determinable mental impairment (see Exhibit 9E).

5.   The claimant has no impairment or combination of impairments meeting or equaling in severity any impairment set forth in the Listing of Impairments in Appendix 1, Subpart P, Regulations No. 4.

6.   I[t] is found that the claimant retains the following residual functional capacity (RFC): From an exertional standpoint, she is limited to "light" work activities, as defined at 20 CFR 404.1567(b), 416.967(b) (see also SSR 96-8p), with the proviso that the claimant should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  There are no other non-exertional limitations (20 CFR 404.1545, 416.945).  The claimant's symptom allegations to the contrary are not credible or reliable for the reasons set forth in the body of this decision.  The testimony of the lay witnesses was contrived, biased, and basically a repetition of the claimant's allegations which are grossly exaggerated and not at all credible.

7.   The claimant reported that she is now 49 years old, received a high school education, is literate, and has past relevant work (PRW) as a landscaper, motel maid, and home telemarketer.

8.      Given the above-noted RFC, it is agreed with the State Agency that the claimant has failed to meet the burden of showing that her pulmonary impairment prevents her from doing her PRW as a home telemarketer.  She admittedly is able to do this job part-time, and no reason is seen in this record why she cannot do the job on a full-time basis.  It is therefore found that the claimant [is] "not disabled" at the fourth sequential step (20 CFR 404.1520(f), 416.920(f)).

9.      The claimant was not under a "disability" within the meaning of the Act at any time on or before the date of this decision.

(CAR at 19).  After the Appeals Council declined review on January 24, 2007, this appeal followed.

## II.  SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following:

(1)     Medical records dated November 4, 2003 from Northern California Research Corporation (CAR 196-206);

(2)     Medical records covering the period from December 3, 2003 to January 6, 2004 from Med 7 Urgent Care Facility (CAR 207-13);

(3)     Internal Medicine Consultive Examination dated November 29, 2004 by MDSI Physician Group, Jenna Beech, M.D. (CAR 214-18);

(4)     Medical report dated January 13, 2005 by Marvin Gatz, M.D. (CAR 219-24);

(5)     Residual Functional Capacity Assessment-Physical (DDS) dated December 14, 2004 (CAR 225-34);

(6)     Medical records dated March 29, 2005 from Donald Rifas, M.D. (CAR 235-38); and

(7)     Medical records dated May 16, 2006 from the UC Davis Medical Center (CAR 239-239A).

Relevant Medical Records:

2003

On November 4, 2003, plaintiff had a Pulmonary Function Test.  The report indicates a moderate obstructive pulmonary impairment, "indicated by the finding of a moderate reduction in the forced expired volume in one second as a [percentage] of the forced vital

1   capacity (FEV1/FVC).  The degree of functional impairment reflected by the reduction in forced

2   expired volume in the first second (FEV1) is found to be mild."  (CAR at 196).

3          Plaintiff was seen on December 3, 2003 at the Urgent Care Center by Dr. Dean

4   Kim.  Dr. Kim noted that plaintiff brought in a pulmonary function test, which indicated mild

5   Chronic Obstructive Pulmonary Disease (COPD).  Dr. Kim diagnosed plaintiff with COPD, but

6   did not indicate any treatment, follow-up, or limitations.  Plaintiff was simply instructed to

7   recheck as needed.

8          <u>2004</u>

9          There are medical records indicating that plaintiff was seen on January 6, 2004 at

10  the Urgent Care Center by Dr. Kim, but there are no medical notes from that visit.  The medical

11  record simply states her chief complaint was "PP" and "COLD," and gives plaintiff's weight.

12  The only other notation, beyond Dr. Kim's signature, is "VOID."

13         On November 29, 2004, plaintiff had a comprehensive internal medicine

14  evaluation by Dr. Jenna Beech.  Plaintiff's chief complaints were breathing and leg pain.  Dr.

15  Beech noted she had a copy of the pulmonary function test from November 2003.  Petitioner

16  indicated that she has become increasingly short of breath over the past 20 years, including the

17  inability to walk distances further than two blocks, and becoming short of breath when talking.

18  She also indicated increased leg pain, "right greater than left calf pain" which is worse with

19  standing and better with sitting.  Plaintiff stated she was able to do her own hygiene, cook, do

20  dishes, vacuum, and laundry with frequent breaks.  All of plaintiff's medications were over-the-

21  counter, and she was not on any prescription medication.  Dr. Beech noted plaintiff did not speak

22  with significantly shortened sentences.  On examination, Dr. Beech found plaintiff's "chest wall

23  shows bilateral equal extension.  The lungs have diminished breath sounds, but no wheezing or

24  crackles.  There is no increased expiratory phase."  (CAR at 215).  Dr. Beech diagnosed plaintiff

25  with:

26  / / /

4

COPD with pulmonary function testing in November 2003.  This demonstrated moderate obstructive pulmonary impairment.  The claimant feels her symptoms have progressed and I have ordered a repeat pulmonary function testing to be obtained.  Of note, she is not currently on treatment.  Even though this is a chronic progressive illness, she is not being treated, in terms of oxygen and inhaler treatments.

(CAR at 217)[1].

Dr. Beech's functional assessment of plaintiff is that she

can be expected to stand and/or walk for two hours during an eight-hour workday.  This is secondary to her shortness of breath.  The claimant can be expected to sit without limitations.  [Dr. Beech does] not believe that the claimant has any medical necessity for an assistive device for short distances and for level terrain.  She does require a wheelchair for distances beyond her reported limitation of two blocks.  The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently.  She is limited by her shortness of breath.  The claimant has postural limitations and can perform bending, stooping, and crouching occasionally.  This is based on her shortness of breach.  She has no manipulative limitations.  The claimant does, by history, have a communicative limitation, in that she is unable to speak for long periods of time secondary to her dyspnea.  I was not able to confirm this on my evaluation.  She has no visual or workplace environmental limitations.

(Id.)

On December 14, 2004, plaintiff had a physical RFC assessment.  Dr. Clancey found plaintiff could frequently lift 10 pounds; could stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; had the unlimited ability to push and/or pull; had no postural, manipulative, or visual communicative limitations; the only environmental limitations was to avoid concentrated exposure to fumes, odors, gases, etc.

/ / /

/ / /

---

[1]    The court notes that although Dr. Beech indicated she was ordering a repeat pulmonary function test, there is no repeat test in the record pursuant to Dr. Beech's referral, and it appears that Dr. Beech's opinion was rendered without the repeated pulmonary function test.  However, as discussed *infra*, plaintiff did have a new pulmonary function test completed on January 13, 2005 by Dr. Gatz.

1          <u>2005</u>

2          Plaintiff was seen by Dr. Marvin Gatz on January 13, 2005 on a self-referral.

3    Plaintiff's chief complaint was increased shortness of breach, and she was requesting an

4    evaluation and treatment of her COPD.  Plaintiff indicated her only medications were herbal

5    medicines.  Dr. Gatz's review stated plaintiff had "increasing dyspnea with exertion, increased

6    difficulty doing housework.  Fatigue, dizziness, occasional cough, increased mucous secretions."

7    (CAR at 222).  On examination, Dr. Gatz noted plaintiff's blood pressure was 118/70, pulse was

8    76, respirations were 16, weight was 121 pounds, her oxygen saturation was 100%, her chest was

9    clear and she had a regular heart rate and rhythm.  Dr. Gatz performed a pulmonary function test,

10   the results of which were normal.  The interpretation of the pulmonary function test, dated

11   January 13, 2005, was  "NORMAL SPIROMETRIC VALUES indicate the absence of any

12   significant degree of obstructive pulmonary impairment and/or restrictive ventilatory defect."

13   (CAR at 224).  Dr. Gatz's impression was "[questionable] asthma/reactive airways state.

14   However, she does have normal pulmonary function test, I doubt any significant degree of

15   underlying COPD."  (CAR at 223).  Dr. Gatz recommended a trial of Advair and Albuterol, and

16   suggested a follow up in two weeks.

17          On January 30, 2005, plaintiff was seen in the emergency room, with complaints

18   of breathing difficulties.  The report/discharge instructions notes that all of plaintiff's labs and x-

19   rays were all essentially normal.  Plaintiff was given Albuterol and Atrovent for her shortness of

20   breach.  She was instructed to return to the ER for chest pain or difficulty breathing, and to get

21   established with a doctor to be seen in seven days.

22          <u>Relevant Hearing Testimony</u>:

23          At the hearing Plaintiff was without council and after repeated efforts by the ALJ

24   to convince Plaintiff to obtain council, plaintiff chose to continue the hearing without council.

25   Plaintiff testified on her own behalf, and had witnesses Rhonda Danielle Johnson (plaintiff's

26   daughter) and Karen Chapman (plaintiff's friend) testify on her behalf.

1    Plaintiff testified that she was forty-nine and a half, has a twelfth grade education,

2    has received training in medical transcription but is not certified, and at one time took a journalist

3    course, which she did not complete.  Plaintiff stated that at the time of the onset of her alleged

4    disability, she had "two phone work jobs," a part time job working for an insurance company,

5    and "yard work jobs." (CAR at 310-11).  In October 2004, she quit her part time job with the

6    insurance company, and had to cut back her hours in her other jobs due to her breathing trouble.

7    At the time of the hearing, plaintiff was working about 20 hours a week, making $800.00 per

8    month on a contract, working for the "Sacramento Association Retarded."  (CAR at 311).  She

9    testified that she gets "real dizzy, sir, from talking.  My oxygen level is low." (Id.)

10    Plaintiff explained that her current physician was Dr. Jennifer Lee at UC Davis

11    Medical Center.  She had an appointment with Dr. Lee on May 25, 2006.  Previously, plaintiff

12    had seen Dr. Rifus, who took some x-rays which showed white spots on her lungs.  She was

13    taking Advair and Combivent at the time, and she was told that in order to obtain an accurate

14    reading, she only had to wait four to six hours after taking the medication to have the tests run.

15    However, she testified that she later found out that information was incorrect, and the medication

16    could stay in her system for 48 hours.  So, when Dr. Rifus "gave a PFT and FEV went way up.

17    They said there was nothing wrong with me.  And then he showed me the x-rays again and there

18    was hardly a spot on there.  It was really strange."  (CAR at 314).  She stated she had a doctor

19    friend give her a PulseOx 5500 in order for her to check her own oxygen levels, which have been

20    in the 80's and inconsistent with her physician's readings.  She also testified that due to her low

21    oxygen levels, she is "having trouble breathing and the meds aren't  working."  (CAR at 315).

22    Plaintiff thought her doctor's machines were very old and needed to be calibrated.

23    Plaintiff's 13-year old daughter, Rhonda, testified that she does a lot of the

24    housework, and she pushed her mother in a wheelchair before she got an electric one.  Rhonda

25    stated that she does a lot of the cooking and housecleaning because plaintiff can hardly do it.

26    / / /

1    Plaintiff's friend Karen Chapman also testified.  Ms. Chapman testified that

2    plaintiff's health has deteriorated over the past nine years, she now struggles to do things she

3    used to be able to do (like singing and walking), and plaintiff had to be rushed to emergency

4    because she wasn't breathing.

5                                    **III.  STANDARD OF REVIEW**

6    The court reviews the Commissioner's final decision to determine whether it is:

7    (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

8    whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

9    more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

10   (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to

11   support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

12   including both the evidence that supports and detracts from the Commissioner's conclusion, must

13   be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

14   v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

15   decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

16   Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

17   findings, or if there is conflicting evidence supporting a particular finding, the finding of the

18   Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

19   Therefore, where the evidence is susceptible to more than one rational interpretation, one of

20   which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

21   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

22   standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

23   Cir. 1988).

24   / / /

25   / / /

26   / / /

8

## IV.  DISCUSSION

In her motion for summary judgment, plaintiff argues that the ALJ erred in determining that she was not disabled.  Specifically, plaintiff argues: (1) the ALJ erred in finding her not disabled; (2) the ALJ improperly rejected her testimony as not credible; and (3) the ALJ improperly rejected or ignored the medical opinions of her treating physicians.  Plaintiff has also submitted new evidence to support her contention that she is disabled.

### A.      FIVE-STEP DISABILITY EVALUATION

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled.  20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further.  20 C.F.R. §§ 404.1520(a) and 416.920(a). The five-step process is summarized as follows:

1.  Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;

2.  If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;

3.  If the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations;[2] if the claimant does have such an impairment, the claimant is disabled and the analysis ends;[3]

/ / /

---

[2]      See 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[3]      If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits.  See Marcia v. Sullivan, 900 F.2d 172, 174  (9th Cir. 1990) (citing Williams v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987); Key  v. Heckler, 754 F.2d 1545, 1548 (9th Cir. 1985).

1    4.  If the claimant's impairment is not listed, determination of whether the

2  impairment prevents the claimant from performing his or her past work;[4]  if the impairment does

3  not, the claimant is not presumed disabled and the analysis ends; and

4    5.  If the impairment prevents the claimant from performing his or her past work,

5  determination of whether the claimant can engage in other types of substantial gainful work that

6  exist in the national economy;[5]  if the claimant can, the claimant is not disabled and the analysis

7  ends.

8    To qualify for benefits, a claimant must establish that he or she is unable to

9  engage in substantial gainful activity due to a medically determinable physical or mental

10  impairment which has lasted or can be expected to last for a continuous period of not less than 12

11  months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or

12  mental impairment of such severity that he or she is unable to do his or her previous work and

13  cannot, considering his or her age, education and work experience, engage in any other kind of

14  substantial gainful work which exists in the national economy.  Quang Van Han v. Bower, 882

15  F.2d 1453, 1456 (9th Cir. 1989).

16    The claimant has the initial burden of proving the existence of a disability within

17  the meaning of the Act.  Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).  The claimant

18  establishes a prima facie case of disability by showing that a physical or mental impairment

19  prevents him from engaging in his previous occupation (steps 1 through 4 noted above).  Gallant

20  v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

21  However, once the claimant establishes a prima facie case of disability, the burden of going

22  

23    [4]    At this stage of the analysis, the ALJ should consider the demands of the
24  claimant's past work as compared with his or her present capacity.  Villa v. Heckler, 797 F.2d
   794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).

25    [5]    At this stage of the analysis, the ALJ should consider the claimant's residual
26  functional capacity and vocational factors such as age, education and past work experience.  20
   C.F.R. §§ 404.1520(f) and 416.920(f).

1   forward with the evidence shifts to the Commissioner.  Burkhart v. Bowen, 856 F.2d 1335, 1340

2   (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  The Commissioner

3   has the burden to establish the existence of alternative jobs available to the claimant, given his or

4   her age, education, and medical-vocational background (step 5 noted above). In an appropriate

5   case, the Secretary may meet this burden through application of the medical-vocational

6   guidelines set forth in the regulations.[6]  See 20 C.F.R. Pt. 404, Subpt. P, App. 2; Heckler v.

7   Campbell, 461 U.S. 458 (1983); Olde v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983).  If the

8   guidelines do not accurately describe a claimant's limitations, the Commissioner may not rely on

9   them alone to show availability of jobs for the claimant.  See Desrosiers v. Sec'y of Health &

10  Human Servs., 846 F.2d 573, 577 (9th Cir. 1988).[7]

11          Here, plaintiff submitted a minimal amount of evidence in support of her

12  contention that she had a medical condition so serious she was unable to engage in her previous

13  employment.  In support of her assertion that she is disabled, she provided to the Commissioner

14  an unsigned pulmonary function test from November 2003, which showed she had a mild

15  impairment.  She also submitted notes from Dr. Kim which indicated she was diagnosed with

16  mild COPD, but there was no follow-up or additional treatment from Dr. Kim.  The only other

17  relevant medical records plaintiff provided was from her visit with Dr. Gatz in January 2005.

18  After conducting another pulmonary function test, which was normal, Dr. Gatz found plaintiff

19

20          [6]      For any given combination of factors (residual functional capacity, age, education,
21  and work experience), the guidelines direct a conclusion of disability or nondisability when they
    accurately describe a claimant's particular limitations.

22          [7]      However, the mere allegation of the presence of a non-exertional impairment is
    not sufficient to preclude application of guidelines.  Such non-exertional impairment must be
23  found to significantly limit the range of work permitted by a claimant's exertional limitations
    before the Commissioner will be required to obtain expert vocational testimony regarding the
24  availability of other work.  See, e.g., Polny v. Bowen,  864 F.2d 661, 663 (9th Cir. 1988);
    Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Razey v. Heckler, 785 F.2d 1426, 1430
25  (9th Cir. 1986) (modified 794 F.2d 1348 (1986)); Perminter v. Heckler, 765 F.2d 870, 872 (9th
    Cir. 1985).  Pain has been recognized as a non-exertional limitation which can significantly limit
26  ability to perform basic work skills.  See Perminter, 765 F.2d at 872.

1   may be suffering from asthma, but doubted any significant degree of COPD.  Plaintiff did not

2   provide the Commissioner any medical opinion which found plaintiff was limited to any degree

3   by her medical condition.

4         The ALJ found plaintiff's COPD was a severe impairment, but found plaintiff was

5   capable of performing her past relevant work as a home telemarketer and therefore was not

6   considered disabled.  Plaintiff argues that she is unable to perform her past work as a

7   telemarketer due to her inability to breath adequately.  She essentially argues that her COPD

8   causes her to be short of breath, and without the ability to breath adequately, she is not able to

9   talk on the phone for any significant length of time, which is required as a telemarketer.

10        Plaintiff has submitted additional evidence in support of her contention, which is

11  discussed below.  However, given the lack of medical evidence available to the ALJ, the court

12  cannot find the ALJ erred.  Plaintiff failed to meet her burden of proof that she has a medical

13  condition severe enough that she is not able to perform her past relevant work.

14        **B.**    **DUTY TO DEVELOP THE RECORD**

15        The ALJ has an independent duty to fully and fairly develop the record and assure

16  that the claimant's interests are considered.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th

17  Cir. 2001).  When the claimant is not represented by counsel, this duty requires the ALJ to be

18  especially diligent in seeking all relevant facts.  See id.  This requires the ALJ to "scrupulously

19  and conscientiously probe into, inquire of, and explore for all the relevant facts."  Cox v.

20  Califano, 587 F.2d 988, 991 (9th Cir. 1978).   Ambiguous evidence or the ALJ's own finding that

21  the record is inadequate triggers this duty.  See id.  The ALJ may discharge the duty to develop

22  the record by subpoenaing the claimant's physicians, submitting questions to the claimant's

23  physicians, continuing the hearing, or keeping the record open after the hearing to allow for

24  supplementation of the record.  See id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir.

25  1998)).

26  / / /

1    Plaintiff proceeded in this matter without counsel.  Therefore, the ALJ had a duty

2  to be especially diligent in seeking all relevant facts.  In accordance with his duty, the ALJ

3  ordered a consultative examination.  Plaintiff was examined by Dr. Beech in November 2004.

4  On examination, Dr. Beech found plaintiff did not have difficulty speaking, had diminished

5  breath sounds but no wheezing or crackles, and no increased expiratory phase.  Dr. Beech

6  reviewed plaintiff's November 2003 pulmonary function test, and found it demonstrated

7  moderate obstructive pulmonary impairment.  Dr. Beech noted she ordered a repeat pulmonary

8  function test.  Although there is no repeat pulmonary function test from Dr. Beech, plaintiff saw

9  Dr. Gatz in January 2005 who performed a pulmonary function test.  Dr. Gatz, plaintiff's own

10  physician, found the pulmonary function test results were normal.

11    The ALJ is required to fully develop the record, including ordering a consultative

12  examination when necessary.  The ALJ fulfilled his duty in this case.  Plaintiff submitted a

13  pulmonary function test from 2003 which indicated she suffered from mild COPD.  The ALJ

14  ordered a consultative examination, which occurred.  In furtherance of the record, Dr. Beech

15  found a new pulmonary function test was needed.  Plaintiff obtained this on her own in 2005, the

16  results of which were normal.[8]  In addition, plaintiff had indicated at the hearing that she had

17  additional medical appointments scheduled.  The ALJ then held the hearing open for plaintiff to

18  supplement the record by providing the ALJ with copies of any test results that were done

19  through the end of May 2006.  The ALJ thus provided her the means to submit any additional

20  reports to support her application.  However, she did not provide any additional evidence within

21  the allotted time, nor did she ask for additional time to submit the supplemental medical reports.

22  The court finds the ALJ adequately discharged his duty.

23  / / /

24  / / /

25  _____

26    [8]    Plaintiff argues the results of this test were skewed due to her medications.
  However, she has not submitted any evidence or medical opinion to support her contention.

1      C.      MEDICAL EVIDENCE

2              The weight given to medical opinions depends in part on whether they are

3  proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

4  821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

5  professional, who has a greater opportunity to know and observe the patient as an individual,

6  than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

7  (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

8  to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

9  (9th Cir. 1990).

10             In addition to considering its source, to evaluate whether the Commissioner

11 properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

12 in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

13 uncontradicted opinion of a treating or examining medical professional only for "clear and

14 convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

15 While a treating professional's opinion generally is accorded superior weight, if it is contradicted

16 by an examining professional's opinion which is supported by different independent clinical

17 findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

18 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

19 rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

20 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

21 the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

22 finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

23 legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

24 professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

25 without other evidence, is insufficient to reject the opinion of a treating or examining

26 professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

14

conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

see also Magallanes, 881 F.2d at 751.

Here, there was no opinion from plaintiff's treating physician regarding her

limitations.  The only supporting medical evidence plaintiff submitted was a diagnosis from Dr.

Kim as to her COPD.  Her only other treating physician, Dr. Gatz, found plaintiff perhaps had

asthma, but doubted any significant degree of COPD.[9]  Giving the limited medical evidence as to

plaintiff's limitations, the ALJ obtained a consultative examination from Dr. Beech.  Dr. Beech

found plaintiff capable of standing and/or walking for two hours, secondary to her shortness of

breath, and sitting without limitation.  Dr. Beech found plaintiff required a wheelchair to assist

her with mobility beyond walking two blocks, capable of lifting and carrying 20 pounds

occasionally and 10 pounds frequently, and bending, stooping and crouching occasionally, again

limited by her shortness of breath.  Dr. Beech also found plaintiff may have a communication

limitation in being unable to speak for long periods of time secondary to her dyspnea, but she

was not able to confirm this on examination.

The ALJ also a had residual functional capacity assessment from a State Agency

Medical Consultant.  This non-examining medical professional found plaintiff capable of lifting

10 pounds, and  stand/walk/sit for about six hours.  No other limitations were found, except to

avoid concentrated exposure to fumes, odors, gases, etc.

The ALJ, giving plaintiff the benefit of doubt, found her COPD severe.  However,

he found her RFC included the ability to perform light work, but avoiding fumes, etc.  The ALJ

agreed with the State Agency's physician that plaintiff does not need to use a wheelchair for

---

[9]     Plaintiff testified to an examination by Dr. Rifus, and the CAR indicates medical records from a Dr. Rifus at CAR 235-38.  However, the court does not find any medical records from Dr. Rifus at CAR 235-38 or anywhere in the CAR.  The records at CAR 235-35 are duplicate medical records from Urgent Care Center and her pulmonary function test from November 2003.

1    mobility, citing the lack of medical evidence for such limitation.  There was no opinion from a

2    treating physician for the ALJ to utilize.  Without a treating physician's opinion, the next best

3    source is an examining physician, in this case Dr. Beech.  Dr. Beech found plaintiff more limited

4    than the non-examining State Agency's physician.  The main difference between these two

5    professionals was in plaintiff's ability to stand and/or walk.  Dr. Beech found plaintiff limited in

6    her ability to stand and/or walk, and limited her to about two hours.  The State Agency's

7    physician found plaintiff had the ability to stand and/or walk for six hours.

8           The ALJ agreed with the State Agency's physician's limitations, finding plaintiff

9    capable of performing light work.[10]  He did so citing to the lack of medical evidence of a need for

10   a wheelchair, and the lack of ER treatment records, hospitalization records, or doctor's office

11   notes.  The court notes that Dr. Beech's limitations are based on plaintiff's subjective complaints,

12   not on any clinical findings.  Accordingly, although minimal, the ALJ's reasons for agreeing with

13   the non-examining physician's limitations are sufficient to resolve the conflict.[11]

14          **D.    PLAINTIFF'S CREDIBILITY**

15          The Commissioner determines whether a disability applicant is credible, and the

16   court defers to the Commissioner's discretion if the Commissioner used the proper process and

17   provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  An explicit

18   credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

19   F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester, 81 F.3d at 834.

20

21          [10]    "Light work" involves lifting no more than 20 pounds at a time with frequent
     lifting or carrying of objects weighing up to 10 pounds; it may require a good deal of walking or
22   standing; if it involves sitting most of the time, it usually involves some pushing and pulling of
     arm or leg controls.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b).

23          [11]    Plaintiff complains about her shortness of breath.  None of the physicians render
     an opinion regarding her ability to talk for a significant amount of time based on objective
24   clinical findings.  The ALJ found she is capable of performing her past relevant work as a home
     telemarketer.  It would appear to the court that this occupation would require the ability to talk
25   for a significant amount of time.  As this matter will be remanded for further proceedings, it is
     not necessary for the court to address this issue.  However, on remand the Commissioner is
26   advised that it may be necessary to address this alleged limitation.

1    Rather, the Commissioner must identify what testimony is not credible and what evidence

2    undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record

3    of malingering, the Commissioner's reasons for rejecting testimony as not credible must be

4    "clear and convincing."  See id.

5               If there is objective medical evidence of an underlying impairment, the

6    Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

7    because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

8    341, 347-48 (9th Cir. 1991) (en banc).  The Commissioner may, however, consider the nature of

9    the symptoms alleged, including aggravating factors, medication, treatment, and functional

10   restrictions.  See id. at 345-47.  In weighing credibility, the Commissioner may also consider: (1)

11   the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

12   testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

13   prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

14   physician and third-party testimony about the nature, severity, and effect of symptoms.  See

15   Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

16              Here, the ALJ found plaintiff's testimony not credible

17             given the pervasive evidence of symptom exaggeration and
             symptom embellishment in this record; the inconsistencies in the
18           record . . . ; the almost total lack of treating medical evidence; the
             claimant's admitted activities of daily living as set forth in Dr.
19           Beech's report . . . ; and the claimant's admitted ability to work
             part-time as a home telemarketer (20 CFR 404.1529, 416.929, SSR
20           96-7p).

21   (CAR at 18).

22              The reasons the ALJ provides for rejecting plaintiff's testimony are clear and

23   convincing.  The ALJ used the proper process and provided proper reasons, and the court

24   therefore defers to his opinion.[12]

25   _____

26       [12]    The court notes, however, that one of the ALJ's reasons for finding plaintiff not
     completely credible is the lack of treating medical evidence.  As plaintiff has submitted

17

1

## E.    WITNESS CREDIBILITY

2         In determining whether a claimant is disabled, an ALJ generally must consider lay

3  witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915,

4  919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay

5  testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

6  evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v. Chater, 100

7  F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony

8  of lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at

9  919.  The ALJ, however, need not discuss all evidence presented.  See Vincent on Behalf of

10  Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Rather, he must explain why

11  "significant probative evidence has been rejected."  Id. (citing Cotter v. Harris, 642 F.2d 700, 706

12  (3d Cir.1981)).

13         Here, there were two witnesses who testified at the hearing, plaintiff's daughter

14  and friend.  Plaintiff's daughter testified that she did most of the house work and cooking, and

15  that she pushed her mother in a wheelchair before she got an electric one.  Plaintiff's friend

16  testified that she has witnessed plaintiff's health deteriorate and that plaintiff now struggles to do

17  the things she used to be able to do.  Plaintiff's friend also testified that she took plaintiff to the

18  emergency room due to plaintiff's inability to breath.  The ALJ discussed the witnesses'

19  testimony and found both witnesses' testimony "contrived, biased, and basically a repetition of

20  the claimant's allegations which are found grossly exaggerated and not at all credible."  (CAR at

21  16, 17).  In addition, the ALJ found no record of the emergency room visit.

22  ///

23  ///

24  ///

25

26  additional evidence in support of her claim, as discussed below, the ALJ is advised that it may
also be necessary to reassess plaintiff's credibility.

18

1    The ALJ did not ignore or silently disregard this evidence.  The ALJ found it not

2    credible, controverted by the available medical evidence, and provided proper reasons for

3    rejecting it.  The court defers to the ALJ's discretion in finding the lay witness testimony not

4    credible.

5    **F.    NEW EVIDENCE**

6    Plaintiff has submitted additional medical  records and asks this court to consider

7    these records in determining whether the matter should be remanded to the Commissioner.  The

8    new evidence consists of records and reports from Victor A. Kyaw, M.D. and Mary Jean Ailarey,

9    P.T.  In a medical report for the California Department of Health and Human Services, dated

10   June 19, 2007, Dr. Kyaw states plaintiff has been diagnosed with COPD (with an onset date of

11   October 2004), is on oxygen, and is physically incapacitated and does not have the ability to

12   work.  (See Request for Remand (Doc. 30) at 6).  Plaintiff also submitted an evaluation from her

13   physical therapist who has recommended the use of a power wheelchair.  (See id. at 3).

14   A case may be remanded for the consideration of new evidence if the evidence is

15   material and good cause exists for the absence of the evidence from the prior record.  Sanchez v.

16   Sec'y of Health & Human Servs., 812 F.2d 509, 511-12 (9th Cir. 1987).  In order for new

17   evidence to be "material," the court must find that, had the Secretary considered this evidence,

18   the decision might have been different.  The court need only find a reasonable possibility that the

19   new evidence would have changed the outcome of the case.  Booz v. Sec'y of Health & Human

20   Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984).

21   Defendant objects to this new evidence as a basis for remand because it "is

22   immaterial to the instant case and does not warrant remand."  (Defendant's Motion (Doc. 41) at

23   8).  He argues that the records do not cover the period covered by the ALJ's decision and do not

24   support plaintiff's medical problems, but may speak to "alleged new medical problems."  (Id.)

25   ///

26   ///

1    The court does not agree with defendant's contentions.  The new evidence

2    plaintiff has submitted supports her position that she suffers from severe COPD.  Dr. Kyaw's

3    statement indicates plaintiff has been diagnosed with COPD, the medical condition she alleged in

4    her application.  In addition, Dr. Kyaw notes that the onset date of her condition was October

5    2004, the exact time frame that was before the ALJ.  The ALJ specifically found a lack of

6    treatment and a lack of medical records contributed to his findings.  The new evidence not only

7    supports plaintiff's contention that she suffers from COPD, but it also indicates that plaintiff has

8    some severe limitations from that diagnosis.  Given that the new evidence is from plaintiff's

9    treating physician, there is a reasonable possibility that this new evidence may have changed the

10   outcome of the case.  Providing there was good cause for the absence of this evidence, plaintiff

11   should have an opportunity to present this new evidence, as her treating physician's opinion, to

12   the Commissioner in support of her application.

13   "The good cause requirement often is liberally applied, where . . . there is no

14   indication that a remand for consideration of new evidence will result in prejudice to the

15   Secretary."  Burton v. Heckler, 724 F.2d 1415, 1417-18 (9th Cir. 1984) (citing Johnson v.

16   Schweiker, 656 F.2d 424, 425-27 (9th Cir. 1981)).  Defendant does not indicate any prejudice

17   will result upon remand for consideration of this evidence.  This evidence did not exist at the

18   time of the ALJ's decision.  When the evidence did not exist at the time of the ALJ's decision,

19   good cause can be found for plaintiff's failure to introduce it.  See id.  Accordingly, the

20   undersigned finds a remand for further proceedings is appropriate for plaintiff to be able to

21   produce this new evidence in support of her application.

22                              **V.  CONCLUSION**

23   For the foregoing reasons, this matter will be remanded under sentence four of 42

24   U.S.C. § 405(g) for further development of the record and/or further findings addressing the

25   deficiencies noted above.

26   / / /

1          Accordingly, IT IS HEREBY ORDERED that:

2            1.     Plaintiff's motion for summary judgment is granted;

3            2.     The Commissioner's cross motion for summary judgment is denied;

4            3.     This matter is remanded for further proceedings consistent with this order;

5  and

6            4.     The Clerk of the Court is directed to enter judgment and close this file.

7

8   DATED: September 15, 2008

9

10                            **CRAIG M. KELLISON**
                            UNITED STATES MAGISTRATE JUDGE